IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF INYO,                              ) | CV F 06-1502 AWI DLB |
|                                              ) | |
| Plaintiff,            ) | ORDER ON PLAINTIFF'S |
|                                              ) | MOTION FOR |
| v.                          ) | RECONSIDERATION AND |
|                                              ) | ORDERS ON STIPULATED |
| DEPARTMENT OF THE INTERIOR,                  ) | CORRECTIONS |
| DIRK KEMPTHORNE, in his capacity             ) | |
| as Secretary, NATIONAL PARK                  ) | |
| SERVICE, MARY A. BOMAR, in her               ) | |
| capacity as Director, and JAMES T.           ) | |
| REYNOLDS, in his capacity as                 ) | |
| Superintendent, Death Valley National        ) | |
| Park,                                        ) | Doc. #'s 63 and 64 |
|                                              ) | |
| Defendants.            ) | |
| _____ ) | |

On August 11, 2008 the court issued an order granting in part and denying in part Defendant and Defendant-Intervenors' motion to dismiss for lack of subject matter jurisdiction (the "August 11 Order"). The parties have stipulated that the August 11 Order should be amended to accommodate certain facts that were misconstrued by the court. In addition, Plaintiff has moved for reconsideration of the majority portion of the August 11 Order that dismissed all but a portion of one of Plaintiff's claims to quiet title. The court will discuss the two motions in order.

**I. Stipulation to Amend**

The parties agree the August 11 Order reflects two misperceptions of fact. The first, and more significant of the two, is that Plaintiff's Quiet Title action includes a claim against the

1  northern portion of Petro Road that was identified by the court as not having been included in
2  Wilderness Study Area ("WSA") # 147.  The major portion of Petro Road, except for the the
3  segment at the northern end, does indeed lie inside WSA # 147 and the court found Plaintiff's
4  claims to quiet title were barred by the applicable statute of limitation save for the portion of
5  Petro Road identified by the court as being outside WSA # 147.  The parties point out that
6  Defendant has not asserted a claim to the northern segment of Petro Road that was excluded from
7  WSA # 147, and Plaintiff's complaint does not seek to quiet title to that segment of road.  The
8  misperception arose from the fact the map included as an exhibit to the complaint showed the
9  entirety of Petro Road, but did not clearly indicate that the northern portion of the road between
10 the northern end of Greenwater Canyon and the intersection with State Route 127 was outside the
11 boundary of Death Valley National Park and that the National Park boundary marked the
12 northern extent of Defendant's claim.
13      In the second and less significant error, the court's August 10 Order erroneously referred
14 to Death Valley National Park by its former designation of Death Valley National Monument.
15 This error is noted but will not affect the court's order.
16      The parties' stipulation of facts do not significantly alter the effect of the court's August
17 11 Order, but the facts misapprehended by the court are such that amendment of the August 11
18 Order will be necessary in order to avoid possible confusion.  An amended order will be filed and
19 served concurrently with this order.
20 **II.  Motion to Reconsider**
21      Motions to reconsider are committed to the discretion of the trial court.  Combs v. Nick
22 Garin Trucking, 825 F.2d 437, 441 (D.C.Cir. 1987); Rodgers v. Watt, 722 F.2d 456, 460 (9th
23 Cir. 1983) (*en banc*).  To succeed, a party must set forth facts or law of a strongly convincing
24 nature to induce the court to reverse its prior decision.  See, e.g., Kern-Tulare Water Dist. v. City
25 of Bakersfield, 634 F.Supp. 656, 665 (E.D.Cal. 1986), aff'd in part and rev'd in part on other
26 grounds, 828 F.2d 514 (9th Cir. 1987), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d
27 214 (1988).  The Ninth Circuit has stated that "[c]lause 60(b)(6) is residual and 'must be read as
28

2

being exclusive of the preceding clauses.'" <u>LaFarge Conseils et Etudes, S.A. v. Kaiser Cement</u>, 791 F.2d 1334, 1338 (9th Cir. 1986), quoting <u>Corex Corp. v. United States</u>, 638 F.2d 119 (9th Cir. 1981). Accordingly, "the clause is reserved for 'extraordinary circumstances.'" <u>Id.</u> See <u>Catholic Soc. Servs. V. Ashcroft</u>, (No. CIV S-86-1343 LKK), 2002 U.S. Dist. LEXIS 19194, *57, n. 18 (E.D. Cal. July 25, 2002) ("Generally speaking, before reconsideration may be granted, there must be a change in the controlling law, the need to correct a clear error, or the need to prevent manifest injustice.").

Plaintiff's motion for reconsideration is based on three contentions, which are aimed at three different parts of the court's August 11 Order. First, Plaintiff notes that the court's August 11 Order recognized the fact that the northern three-quarter of a mile segment of Last Chance Road had been "cherry stemmed" out of WSA 112 in 1979, but it appears the court declined to apply the reasoning it applied to the northern segment of Petro Road to reach the same conclusion it reached when it considered the cherry-stemmed region of Last Chance Road. Indeed, the court did not discuss the cherry-stemmed portion of Last Chance Road specifically at all. Second, Plaintiff contends the court erroneously stated that Padre Point Road was one of the roads that was closed to traffic. Plaintiff requests correction of the court's determine with respect to Padre Point Road. Third, and most significantly, Plaintiff argues the court's determination that Plaintiff's cause of action under the Quiet Title Act accrued in 1979 was clearly erroneous because there was no government claim against the same interest claimed by Plaintiff's right of way prior to the incorporation of the rights of way into the lands identified by the California Desert Protection Act of 1994. The court will discuss Plaintiff's claims in order.

### *A. Last Chance Road – Northern Three-Quarter Mile Cherry-Stemmed Segment*

In its August 11 Order, the court recited the facts pertaining to Last Chance Road as understood by the court as follows:

> The descriptive narrative for WSA # 112, which incorporates Last Chance Road, describes the area as being bounded on the south by a road that is also called Last Chance Canyon Road from which the subject Last Chance Canyon Road branches northward and continues until its intersection with Cucomongo Canyon Road on the north boundary of the WSA. Doc. # 49-3. A road that parallels the subject

> Last Chance Canyon Road north from the southern boundary to Last Chance Spring was "cherry stemmed" out of the WSA, *as was a short three-quarter mile segment of the subject Last Chance Canyon Road at the northern end where it intersects with Cucomongo Canyon Road*.

Doc. # 62 at 4:3-10 (italics added).

      Some of the confusion that has been generated with regard to Plaintiff's action and Defendant's motion to dismiss is the result of the fact Plaintiff's argument that the southern section of Last Chance Road was cherry-stemmed out of WSA # 112 refers to a road that leads to Last Chance Spring (hereinafter "Last Chance Spring Road"), which lies southwest of the Last Chance Road and is distinct from the Last Chance Road that was included in WSA # 112.  A description and map of WSA # 112 also shows a short section of approximately three-quarters of a mile at the north end of Last Chance Road that was cherry stemmed out of WSA # 112.  Based on the reply memoranda of both the Federal Defendants and Defendant-Intervenors, the court formed the opinion, perhaps erroneously, that the northern segment of Last Chance Road that was, in fact, cherry-stemmed out of WSA # 112 was not among the rights of way that are the subject of Plaintiff's action under the Quiet Title Act because the Department of the Interior had made no claim upon it.  The court, again perhaps erroneously, presumed that because the federal Defendants alleged they had asserted no claim against the cherry-stemmed portion of the Last Chance Spring Road, the same was true of the similarly cherry-stemmed portion of the northern segment of Last Chance Road.

      Upon re-examination of the pleadings of both Federal Defendants and Defendant-Intervenors, it appears that the Defendant parties do not seek *dismissal* of Plaintiff's quiet title claim with respect to the one-half to three-quarter segment of Last Chance Road.  This of course leaves open the possibility that the northern, cherry-stemmed, portion of Last Chance Road was a subject of Plaintiff's quiet title action, but was not a subject of Defendants' motion to dismiss.  At this point the court need not address whether the parties' understand that the northern three-quarter mile segment of Last Chance Road is, or is not, at issue in this action.  It is sufficient to note that Defendants did not seek dismissal of Plaintiff's action with respect to that northern

4

portion of Last Chance Road.  The court will leave it to the parties to determine whether Plaintiff's action seeks to quiet title to that small northern portion of Last Chance Road.

### B. Padre Point Road

The court's August 11 Order noted that Plaintiff "was prevented from accessing or performing maintenance on any of the four rights of way following enactment of the CDPA in 1994, but not before that time.  The four rights of way have been closed to vehicular traffic since 1994, either by the positing of signs or by the erection of physical barriers."  Doc. # 62 at 6:25-7:1.  Plaintiff alleges the court was erroneous in including Padre Point Road as being among the rights of way that have been closed to vehicular traffic since 1994.  Plaintiff alleges Padre Point Road has not been closed to vehicular traffic to this point.  As there appears to be no dispute as to Plaintiff's allegation, the court will make note of the correction.  Because the court's determination of the time of accrual of Plaintiff's claim under the Quiet Title Act is not dependent on closure of the rights of way, the court's correction of the fact has no bearing on the court's decision.

### C. Scope of Defendant's Claims Against Plaintiff's Rights of Way

The court's August 11 Order held that Plaintiff's cause of action under the Quiet Title Act accrued as of the date Plaintiff had notice of an adverse claim of the United States. 28 U.S.C. § 2409a(g); Knapp v. United States, 636 F.2d 279, 283 (10th Cir. 1980) (reasonable awareness that the government claims some interest adverse to the plaintiff's is sufficient to begin running of statute of limitations).  The court noted that the question of when the statute of limitations is triggered implicates two component considerations: what constitutes notice, and what constitutes a "claim of the United States?"  See Vincent Murphy Chevrolet Co. v. United States, 766 F.2d 449, 451 (10th Cir. 1985) ("present case does not involve the question of when it was reasonable for appellants to have known of the claim of the United States, but rather centers upon the question of just what is the 'claim' of the United States for Purposes of section 2409a(f)").  The court held there was no real question as to notice in this action; rather, the question is whether and when there was a adverse claim of the United States.  Doc. 62 at 10:23-11:1.

1   The court's August 11 Order reasoned:

2   Designation of a tract of land as a WSA also implicates a commitment by BLM to manage the land "so as not to impair the suitability of such areas for preservation as wilderness, subject, however, to the continuation of existing mining and grazing uses and mineral leasing in the manner and degree in which the same was being conducted on October 21, 1976." 35 U.S.C. § 1782(c). Thus, while designation of an area as a WSA does not necessarily impair its use to the extent the use was established prior to the designation, the designation does impair the ability of Plaintiff to carry out any actions that would diminish the area's wilderness values; for example, by paving, resurfacing, widening, redirecting, or otherwise improving an existing right of way.

Doc. # 62 at 15:9-16. With respect to commencing the running of the statute of limitations, the court held:

As previously discussed, BLM's duty under FLPMA to prevent degradation of existing values resulted in an impairment of Plaintiff's ability to enhance or upgrade any of its rights of way for a period of about 12 years. That impairment, even though temporary, implicated Plaintiff's due process rights as of the time BLM's determined that the land in question was a WSA within the terms of FLPMA. That impairment, being sufficient to trigger the protections of the Due Process Clause, was also sufficient to give rise to an action under the Quite Title Act.

Doc. # 62 at 19:16-21. The court concluded that Plaintiff's claims under the Quiet Title Act accrued when BLM made its Final Survey Report and published the Report in the Federal Register in 1979. Id.

Plaintiff's major argument in support of their motion for reconsideration is that the claim asserted by United States as of the 1979 Final Survey Report was only against the ability of Plaintiff to improve its rights of way. Plaintiff contends Plaintiff's claim was confined to the rights of way themselves as they existed at the time and that there was no claim for improvement of the rights of way. In essence, Plaintiff's argument is that there was no adverse claim by the United States because the claims of Inyo County and the United States were non-overlapping.

The court can see no legal basis for basing the accrual of Plaintiff's claims under the Quiet Title Act on fine distinctions in the scope of each party's claim in the rights of way in 1979. When Plaintiff acquired the rights of way pursuant to section 8 of the Mining Act of 1866 and its successor statutes, there is no indication that the rights acquired were limited by any requirement that the suitability of the areas for preservation as wilderness not be impaired. It

6

1  follows that the inclusion of the land containing the rights of way in BLM's Final Survey Report
2  as WSA's placed *new* restrictions on the bundle of rights that Plaintiff had held in the rights of
3  way prior to the publication of the Report.  Pursuant to the court's discussion in the August 11
4  Order, it does not matter that the restrictions placed on the rights of way were not directly hostile
5  to Plaintiff's use of the rights of way at the time.  What is determinative of the issue is that *some*
6  new restriction was placed on the bundle of rights that were held by Plaintiff prior to the time of
7  BLM's Final Survey Report.  See Cal. ex rel. State Land Comm'n v. Yuba Goldfields, Inc., 752
8  F.2d 393, 397 (9th Cir. 1984) (actual adversity is not required, *some* impairment of the state's
9  title is sufficient).  It is the placement of those new restrictions in 1979 that the court concluded,
10 and still concludes, were sufficient to commence the running of the statute of limitations.

11       Plaintiff has failed to show the court was clearly erroneous with respect to its
12 determination as to when Plaintiff's claims for relief under the Quiet Title Act accrued.  The
13 court will therefore deny Plaintiff's motion for reconsideration.  The factual corrections
14 stipulated to by the parties will not materially alter the effect of the court's August 11, Order, but
15 they do render a significant portion of the court's order irrelevant and therefore potentially
16 confusing or misleading.  The court will therefore issue an amended version of the August 11
17 Order concurrently with the issuance of this order.  The court will also direct the parties to file a
18 statement of remaining issues in this action or, in the alternative, a stipulation that no issues
19 remain.

20       THEREFORE, in consideration of the foregoing discussion, it is hereby ORDERED that
21 Plaintiff's motion for reconsideration is DENIED.  Each party shall file and serve a short
22 statement of any issues remaining for decision in this action not later than fourteen (14) days
23 from the date of service of this order.  In the alternative, the parties may file a joint stipulation of
24 any remaining issues, or may stipulate that no issues remain.
25 IT IS SO ORDERED.

26 **Dated:    September 25, 2008**                    **/s/ Anthony W. Ishii**
                                                     CHIEF UNITED STATES DISTRICT JUDGE
27
28
                                        7